UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 0:26-cv-61090- DIMITROULEAS/STRAUSS

CHARLES JACOB STRATMANN,

      Plaintiff,

v.

BANK OF AMERICA, N.A.,

      Defendant.

_____/

**BANK OF AMERICA, N.A.'S, MOTION TO DISMISS
COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Bank of America, N.A. ("BANA"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves to dismiss the Complaint filed by Plaintiff Charles Jacob Stratmann ("Plaintiff") in its entirety, and in support states as follows:

**INTRODUCTION**

Plaintiff, who is proceeding *pro se*, brings this action against BANA arising from BANA's lawful repossession and disposition of a 2022 RAM 3500 pickup truck (VIN 3C63R3HL2NG421618) (the "Vehicle"). The Vehicle secured Plaintiff's loan payment obligation under the Security Agreement, and related terms and conditions governing the financing transaction (collectively, the "Security Agreement")[1]. After Plaintiff failed to make the required payments, BANA exercised its rights as secured creditor to repossess and sell the Vehicle.

---

[1] The Security Agreement and Terms and Conditions entered into by Bank of America, N.A. and Plaintiff Charles Jacob Stratmann is attached hereto as Exhibit A.

The Complaint attempts to turn that straightforward secured-party disposition into eleven separate causes of action.  It asserts UCC Article 9 claims, a spoliation claim, claims under the Florida Consumer Collection Practices Act and the Florida Deceptive and Unfair Trade Practices Act, a declaratory judgment claim, and federal RICO claims.  But the Complaint does not confine itself to the Vehicle, the loan, or BANA's alleged disposition conduct.  Instead, it relies on a wide-ranging narrative involving unrelated foreclosure proceedings, other vehicles, other litigation, and an alleged enterprise involving non-party individuals and entities.  Those allegations obscure the limited transaction at issue and do not cure the pleading defects in Plaintiff's claims.

At its core, this case concerns a commercial vehicle financing transaction and BANA's exercise of contractual and statutory remedies following default.  Plaintiff acknowledges that BANA held a security interest in the Vehicle.  He also alleges financial distress and an inability to redeem the collateral.  Although Plaintiff disputes BANA's disposition of the Vehicle and alleges he did not receive pre-sale notice, those allegations sound, if at all, in the specific remedies provided by Article 9.  They do not support a federal racketeering theory or a standalone spoliation tort, and they do not plead the required elements of Plaintiff's FCCPA or FDUTPA claims.  Accordingly, the Complaint should be dismissed in its entirety.

FACTUAL BACKGROUND[2]

**A.  Plaintiff Financed the Purchase of the Vehicle Through BANA**

On or about December 26, 2022, Plaintiff Charles Jacob Stratmann, acting as the Managing Member of Starboard Yacht Group LLC, purchased the Vehicle from Atlantic Coast Automotive, Inc. (d/b/a Rob Lambdin's University Dodge) in Davie, Florida.  Plaintiff, acting on behalf of Starboard Yacht Group LLC, financed the purchase through a loan from BANA, ending in -2108

---

[2] The "facts" in the Complaint are taken as true for the purposes of this Motion only.

in the amount of approximately $93,239.32 (the "Loan").  As collateral for the Loan, Plaintiff

granted BANA a security interest in the Vehicle.  Plaintiff and BANA executed the Security

Agreement which provides in relevant part:

> By Signing below, you agree to all the terms of this Note and request us to issue the loan.  You acknowledge receiving a copy of this Note.
> …
>
> **NOTICE TO CONSUMER:** (1) Do not sign this Agreement before you read it; (2) You are entitled to a copy of this Note; (3) You may, at any time, prepay the unpaid balance of this Agreement without penalty.

*See* Ex. A at 3.  Plaintiff, on behalf of himself and Starboard Yacht Group LLC, signed the Security

Agreement acknowledging these terms and agreeing to abide by its Terms and Conditions,

including the provisions governing default[3]:

> **Repossession of the Collateral For Failure to Pay**: If you fail to pay according to the payment schedule or if you break any of the agreements in this Note (default), we can take the Collateral from you (repossession) subject to any right to cure default you may have.
> …
> **Getting the Collateral Back After Repossession.**  If we repossess the Collateral we will send you a notice of a sale disclosing that you have the right to redeem the Collateral by paying the accelerated balance and other costs of repossession.  Under certain circumstances, you may have the right to reinstate the account by paying past due payments plus any late charges, the cost of taking and storing the Collateral and other expenses that we have incurred or charged allowed by law.

*Id.*

---

[3] Under the Security Agreement, a default can occur for various reasons including if the borrower "fail[s] to make a payment in full when payment is due" or if they "fail to perform any obligation" that they undertook pursuant to the Security Agreement.  *See* Ex. A at 3.  Any default triggers BANA's contractual rights. *Id.*

**B. Plaintiff Failed to Comply with His Payment Obligations, Resulting in Default**

Plaintiff subsequently failed to make the required payments on the Loan. *See* Compl. at 9. Following Plaintiff's admitted default, BANA exercised its rights as a secured creditor under the Security Agreement and Florida's UCC Article 9 to repossess the Vehicle. Plaintiff admits that, despite being aware of his statutory right of redemption under Florida Statutes Section 679.623, he had "no liquid resources" or "funds" to prevent or rectify the default. *Id.* On April 8, 2026, unable to obtain payment from Plaintiff, BANA conducted a private sale of the Vehicle pursuant to its contractual rights under the Security Agreement and its disposition rights under Florida Statutes Section 679.610. *Id.* at 7.

Notwithstanding BANA's lawful exercise of its contractual rights, Plaintiff now alleges that he received no pre-disposition notification of the Vehicle's sale and that BANA refused to disclose the sale price, buyer identity, or other details. *Id.* at 6. Specifically, the Complaint asserts eleven counts alleging that BANA: (i) failed to provide authenticated notification of the sale of the Vehicle **(Count I)**; (ii) failed to provide a reasonable notification period for disposition of the Vehicle **(Count II)**; (iii) engaged in a commercially unreasonable disposition of the Vehicle **(Count III)**; (iv) denied Plaintiff's right of redemption **(Count IV)**; (v) caused Plaintiff to suffer actual damages **(Count V)**; (vi) engaged in third-party spoliation of evidence **(Count VI)**; (vii) violated the Florida Consumer Collection Practices Act ("FCCPA") **(Count VII)**; (viii) violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") **(Count VIII)**; (x) engaged in racketeering **(Count X)**; (xi) engaged in a RICO conspiracy **(Count XI)**; and (ix) seeks declaratory judgment that Plaintiff owes no deficiency **(Count IX)**. *Id.* at 10-16.

Beyond these core allegations, the Complaint contains extensive allegations about unrelated transactions and parties, including references to a Navy Federal Credit Union alleged

4

foreclosure on Plaintiff's homestead, an alleged Seacoast National Bank vessel foreclosure, and an alleged "enterprise" consisting of individuals and entities that have no apparent connection to BANA or the Vehicle transaction at issue. *Id*. at 4-9.

As demonstrated below, each of Plaintiff's claims fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While the court must accept well-pleaded factual allegations as true, it need not accept "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor must the court accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Although *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, a *pro se* plaintiff must still comply with procedural rules and pleading requirements. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).

For claims sounding in fraud, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard requiring that the plaintiff state "with particularity the circumstances

constituting fraud." Fed. R. Civ. P. 9(b); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

## ARGUMENT

### I.    Stratmann Lacks Standing to Assert Claims Belonging to Starboard Yacht Group LLC.

As an initial matter, Plaintiff lacks standing to assert claims or recover damages that belong to Starboard Yacht Group LLC.  Accordingly, the Complaint should be limited to claims Plaintiff may assert in his individual capacity.  It is well established federal law that a Plaintiff may not represent a corporation in a *pro se* capacity. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1382,1385 (11th Cir. 1985) ("After reviewing the record we conclude first that, due to the general rule requiring corporations to be represented by counsel, [Plaintiff] may not represent the corporation in his *pro se* capacity…The rule is well established that a corporation is an artificial entity that can act only through agents, cannot appear *pro se*, and must be represented by counsel."); *see also Latele TV, C.A. v. Telemundo Communs. Grp.*, LLC, 9 F.4th 1349, 1360 (11th Cir. 2021) ("[i]t has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only through licensed counsel") (quotation omitted).

Here, the Complaint is brought by Plaintiff, proceeding *pro se*, "individually and as CEO of Starboard Yacht Group LLC." *See* Compl. at 1.  The loan documents pertaining to the Vehicle likewise identify Starboard Yacht Group LLC as a borrower on the subject financing. *See generally* Ex. A.  However, Starboard Yacht Group LLC is a separate legal entity under Florida law.  *See* Fla. Stat. § 605.0108(1) ("A limited liability company is an entity distinct from its members").  Thus, while Plaintiff may pursue any claims he has in his individual capacity, he cannot use his *pro se* status to assert claims or recover damages that belong to the LLC. *See Palazzo*, 764 F.2d at 1382,1385.  Accordingly, to the extent the Complaint seeks to assert claims or recover damages

6

belonging to Starboard Yacht Group LLC, as opposed to Plaintiff's own rights as an individual co-borrower, those claims should be dismissed or limited accordingly.

II.     **The Complaint Fails to Plead Facts Sufficient to State a Plausible Claim Under Article 9 (Counts I- V).**

Even if Plaintiff is deemed to have standing, his claims fail as a matter of law. Plaintiff's five Article 9 counts (Counts I-V) all rest on the same conclusory assertion: that BANA's disposition of the Vehicle violated Chapter 679.  Because the Complaint fails to plead any facts establishing how BANA's conduct violated the specific statutory provisions at issue, each of these counts should be dismissed.

a.  **Count I and II Are Duplicative Notice Theories and Do Not Support Separate Relief.**

As an initial matter, Counts I and II both challenge the adequacy of BANA's pre-disposition notice, but they assert the same underlying deficiency and cannot support separate relief under Florida's Uniform Commercial Code.  Count I alleges that BANA failed to send any authenticated notification of disposition, while Count II alleges that Plaintiff received zero days' notice. Compl. at 10–11.  Section 679.611 establishes who must receive reasonable signed notification before disposition; § 679.612 addresses when notification is sent within a reasonable time.  Where, as here, Plaintiff alleges no notice at all, Count II does not add a separate substantive violation beyond the alleged failure to send notice pleaded in Count I.  Any remedy for a notice violation is governed by § 679.625, not by duplicative notification counts.

That distinction matters because Article 9 provides a remedial framework for notice violations. Fla. Stat. § 679.625.   Florida courts treat notice as relevant to commercial reasonableness, but not as an independent basis for every category of damages Plaintiff seeks. *Burley v. Gelco Corp.*, 976 So. 2d 97, 100 (Fla. 5th DCA 2008).  In *Burley*, the court explained

that "[n]otice is an integral aspect of whether the disposition is 'commercially reasonable' under chapter 679" and that inadequate notice *may* create a presumption that the sale was commercially unreasonable. *Id.* But the remedy remains within Article 9's statutory scheme. Counts I and II should therefore be treated as a single notice-based Article 9 theory, with relief limited to the remedies available under § 679.625.

### b. Plaintiff Fails to State a Commercial Unreasonableness Claim (Count III).

Count III should be dismissed because the Complaint fails to allege facts establishing that BANA's disposition of the Vehicle departed from commercially reasonable practices under Florida's UCC Article 9. In Count III of the Complaint, Plaintiff alleges that the disposition of the Vehicle in a "private sale" was commercially unreasonable because BANA allegedly refused to disclose sale details, excluded Plaintiff from participating, used a closed dealer-only channel, and proceeded despite notice of an unresolved third-party damage claim. Compl. at 11. Those allegations do not make a private sale commercially unreasonable as a matter of law. Section 679.610 expressly permits a secured party to dispose of collateral through private proceedings if the disposition is commercially reasonable. Fla. Stat. § 679.610(2). Commercial reasonableness turns on the method, manner, time, place, and terms of the disposition, and a disposition may be commercially reasonable if made in the "usual manner in a recognized market, made at the price current in any recognized market at the time of the disposition, or otherwise in conformity with reasonable practices among dealers in the type of property being disposed*." Ford Motor Credit Co., LLC v. Arwine*, 276 So. 3d 275 (Fla. 1st DCA 2019).

Here, Plaintiff does not allege any facts concerning the method employed by BANA, the prevailing commercial practices for disposition of repossessed vehicles, or any facts demonstrating that the disposition departed from accepted commercial practices. Instead, Plaintiff merely

concludes that the disposition was commercially unreasonable. However, Article 9 does not impose a statutory duty requiring a secured party to disclose private sale negotiations to a debtor nor does it permit the debtor to participate in a private disposition. Because Count III consists primarily of legal conclusions unsupported by factual allegations demonstrating that the method, manner, time, place or terms of the sale violated Article 9, Count III should be dismissed.

### c. Plaintiff Does Not Plead Tender of His Obligations

Count IV should also be dismissed because the Complaint does not allege that Plaintiff tendered the full amount required to redeem the Vehicle before BANA disposed of it. Count IV alleges denial of the right of redemption under § 679.623. Compl. at 11–12. But redemption requires tender of both "fulfillment of all obligations secured by the collateral" and the secured party's "reasonable expenses and attorney's fees." Fla. Stat. § 679.623(2); *see also In re Menasche*, 301 B.R. 757, 762 (Bankr. S.D. Fla. 2003) ("The Court concludes that Florida Statutes § 679.623 requirement to 'tender fulfilment of all obligations secured by the collateral' in order to redeem repossessed collateral, means to present payment of the entire balance in a lump sum."). The right may be exercised only before the secured party has collected the collateral, disposed of the collateral, entered a contract for disposition, or accepted the collateral in satisfaction of the obligation. *Id.* § 679.623(3).

Here, the Complaint does not allege that Plaintiff tendered the full secured obligation and expenses before disposition. To the contrary, it alleges that Plaintiff had "no liquid resources with which to exercise the statutory redemption right." Compl. at 9. Furthermore, Plaintiff's allegation that a BANA representative said he "could have purchased the vehicle yesterday" does not plead a denial of redemption. Compl. at 5–6. Article 9 required Plaintiff to tender the full secured obligation and expenses before disposition; it did not require BANA to provide a post-default

9

installment purchase opportunity or extend the redemption period beyond the statutory cutoff. Accordingly, Count IV should be dismissed.

### d.  Plaintiff's Requests for Damages Fail As A Matter of Law (Count V).

Count V, captioned as "Independent Damages for Noncompliant Disposition" and brought under § 679.625, also fails as a matter of law. Compl. at 12.  Although Section 679.625 supplies remedies for proven noncompliance with Article 9, it does not create a substantive duty independent of the Article 9 violations pled by a plaintiff.  A plaintiff may only seek remedies under § 679.625 if he first establishes the underlying failure to comply with Article 9. Liability under § 679.625 is therefore derivative of the underlying violation of Article 9.

Here, the only Article 9 violations identified by Plaintiff are the notice, commercial-reasonableness, and redemption violations identified in Counts I through III.  *Id.*  at 10-11. Count V does not identify any other independent violation of Article 9.  It merely incorporates the allegations of Counts I through IV and alleges that Plaintiff suffered damages "as a result of [BANA's] noncompliant disposition." *Id.* at 12 ("Plaintiff re-alleges and incorporates by reference all prior paragraphs and Counts I-IV").  It identifies no additional wrongful conduct beyond the alleged statutory violations already asserted in the preceding counts. *Id.*  Because Count V seeks only to recover damages allegedly flowing from those same violations already pled in Counts I through IV, it is duplicative and should be dismissed. *See Megladon, Inc. v. Vill. of Pinecrest*, 661 F. Supp. 3d 1214, 1221 n.1 (S.D. Fla. 2023) (Altman, J.) ("Because Count III's allegations reappear (essentially verbatim) in Count IV—and since Count III's cause of action is identical to the part of Count IV that's directed at the [the same defendant]— we now DISMISS Count III as duplicative of Count IV." (cleaned up)).

Even if Plaintiff's claims were not deemed duplicative, the damages Plaintiff seeks exceed what Article 9 permits. Section 679.625(3)(a) allows a debtor or obligor to recover damages under § 679.625(2) for that person's loss. Section 679.625(2) permits damages "in the amount of any loss caused by a failure to comply" with Chapter 679, but **specifically** excludes consequential, special, or penal damages unless independently recoverable under other Florida law. The special statutory minimum in § 679.625(3)(b) applies only "[i]f the collateral is consumer goods." Because the Vehicle was acquired for business use, the consumer-goods statutory minimum is unavailable. Plaintiff's claimed consequential damages, impairment of unrelated claims, and other extra-Article 9 damages should therefore be dismissed or stricken from Counts I through V.

### III.     The Spoliation Claim (Count VI) Fails As a Matter of Law.

Count VI purports to assert a claim for "Third-Party Spoliation of Evidence," incorrectly citing *Bondu v. Gurvich*, 473 So. 2d 1307 (Fla. 3d DCA 1984). Compl. at 12. However, Plaintiff's claims are conclusory and lack the facts sufficient to state a claim of spoliation, requiring dismissal.

Third-party spoliation claims "occur when a person or an entity, though not a party to the underlying action causing the plaintiff's injuries or damages, lost, misplaced, or destroyed evidence critical to that action." *Martino v. Wal-Mart Stores, Inc.*, 908 So. 2d 342, 345 n.2 (Fla. 2005). To state a claim for third-party spoliation of evidence, a party must plead sufficient facts to show "(1) the existence of a potential civil action, (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action, (3) destruction of that evidence, (4) significant impairment in the ability to prove the lawsuit, (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit, and (6) damages." *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 165 F. Supp. 2d 1345, 1359 (S.D. Fla. 2001).

Here, Plaintiff alleges that BANA is a third-party spoliator because BANA "is not a defendant in the five underlying proceedings for which the RAM 3500 is material evidence."

11

Compl. at 12. Specifically, Plaintiff alleges the Vehicle is material evidence in a City of Hollywood property-damage tort claim, a BlueWater wrongful-eviction claim, theft claims, a Dania Beach Police Department investigation, and a federal RICO enterprise action. *Id.* at 7. Plaintiff's theory is that BANA's private sale of the Vehicle impaired his ability to prove or "maximize" those separate claims. *Id.* at 12.

The Complaint fails at the threshold element of duty. "Because a duty to preserve evidence does not exist at common law, the duty must originate either in a contract, a statute, or a discovery request." *Gayer v. Fine Line Constr. & Elec., Inc.*, 970 So. 2d 424, 426 (Fla. 4th DCA 2007); *see also Royal & Sunalliance v. Lauderdale Marine Ctr.*, 877 So. 2d 843, 845 (Fla. 4th DCA 2004). "[N]either the Florida Supreme Court nor Florida's intermediate appellate courts have imposed a common-law duty on a third party to preserve evidence based on foreseeability or actual knowledge" of pending or anticipated litigation. *Shamrock-Shamrock, Inc. v. Remark*, 271 So. 3d 1200, 1203–04 (Fla. 5th DCA 2019); " '[T]hat an actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action unless a special relationship exists between the actor and the other which gives the other the right to protection.' " *In re Palm Beach Fin. Partners II, L.P.*, 517 B.R. 310, 327 (Bankr. S.D. Fla. 2013) (quoting *Delgado v. Lohmar*, 289 N.W.2d 479, 483 (Minn. 1979)).

Here, the Complaint identifies no statute, contract, or properly served discovery request imposing a duty on BANA to preserve the Vehicle as evidence for the five separate proceedings Plaintiff references. At most, Plaintiff alleges that he sent litigation-hold and auction-hold demands to BANA and advised BANA that the Vehicle was relevant to other disputes. Compl. at 4, 7, 12. Under the authorities above, unilateral demands and alleged notice of potential litigation do not give rise to a preservation duty actionable in tort. *See Shamrock-Shamrock*, 271 So. 3d at

12

1203–04; *see also Gayer*, 970 So. 2d at 426.  Count VI therefore fails to plead the requisite duty element.

The Complaint also fails to plead destruction of evidence in the sense required by Florida spoliation law.  Plaintiff does not allege that the Vehicle was physically destroyed.  Rather, he alleges that BANA sold the Vehicle via private sale and refused to disclose the buyer's identity, sale price, and disposition details. Compl. at 5–6, 12. A secured creditor's lawful disposition of collateral under UCC Article 9 is not "destruction" of evidence.  The Vehicle was not destroyed, it was sold, and it continues to exist.  Plaintiff's alleged inability to learn the sale details may overlap with his Article 9 notification and commercial-reasonableness claims (Counts I–III and V), but it does not transform a secured-party disposition into an independent tort for spoliation of evidence.

To the extent Plaintiff's theory is that BANA "concealed" the Vehicle or its disposition records, concealment is not actionable spoliation.  "Concealment of evidence, however, does not form a basis for a claim of spoliation." *Jost v. Lakeland Reg'l Med. Ctr., Inc.*, 844 So. 2d 656, 660 (Fla. 2d DCA 2003); *see also Fla. Evergreen Foliage*, 165 F. Supp. 2d at 1360 (holding that "'concealment' of evidence is not actionable under Florida law").

Because Count VI fails to plead an independent legal duty to preserve the Vehicle as evidence and fails to plead actionable destruction, Count VI should be dismissed with prejudice.

## IV.     Plaintiff's Claim For Violation Of The FCCPA (Count VII) Fails As A Matter Of Law.

In Count VII, Plaintiff alleges that BANA violated the FCCPA by engaging in conduct that "constitutes unfair and unconscionable collection practices." *See* Compl. at 13.  This claim fails for multiple independent reasons.

13

First, Plaintiff broadly claims that BANA violated the FCCPA, however he does not point to any specific statutory provision that was violated.  "To state a claim under the FCCPA, the plaintiff must allege facts plausibly suggesting '(1) the defendant is a person within the meaning of the FCCPA, (2) the defendant collected or attempted to collect a debt from the plaintiff,  and (3) the defendant committed an act or omission prohibited by the FCCPA when it collected or attempted to collect the debt.'" *Gause v. Med. Bus. Consultants, Inc.*, 424 F. Supp. 3d 1175, 1203 (M.D. Fla. 2019) (quoting *Baumann v. Prober & Raphael*, No. 6:15-cv-1951-PGB-GJK, 2017 WL 10350673, at *2 (M.D. Fla. May 17, 2017). Furthermore, "to successfully assert a claim under the FCCPA, a plaintiff must allege a violation of a specific provision of the FCCPA." *Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla. 2d DCA 2012).

The FCCPA lists "nineteen debt collection practices that violate the FCCPA," however, Plaintiff has failed to specify a single statutory violation.  *Gause*, 424 F. Supp. 3d at 1203.  Here, Plaintiff merely asserts that BANA's conduct constituted "unfair and unconscionable practices." Compl. at 13.  Accordingly, the Complaint fails to identify which specific subsection of § 559.72 BANA allegedly violated.  The conduct alleged by Plaintiff, disposing of collateral and declining to produce records, does not correspond to any prohibited practice enumerated in the statute.

## V.       Plaintiff's Claim For Violation of the FDUTPA (Count VIII) Fails As A Matter Of Law.

Plaintiff's FDUTPA claims also fail as a matter of law.  In Count VIII, Plaintiff alleges that BANA engaged in unfair and deceptive practices by (a) accepting litigation-hold demands without response, creating a deceptive impression of compliance; (b) disposing of collateral through a closed channel while refusing disclosure; (c) informing Plaintiff he could have purchased the vehicle yesterday…; and (d) refusing to produce records where voluntary compliance was legally required." *See* Compl. at 13.  However, BANA is not subject to FDUTPA because the statute does

14

not apply to federally regulated banks like BANA.  The Florida Legislature expressly exempted federally regulated banks from compliance with FDUTPA.  *See* Fla. Stat. § 501.212(4)(c) (FDUTPA "does not apply to…[b]anks, credit unions, and savings and loan associations regulated by federal agencies."); *see, e.g.*, *Sov. Bonds Exch., LLC v. Fed. Rep. of Germany*, 899 F. Supp. 2d 1304, 1315-16 (S.D. Fla. 2010) (bank regulated by federal agency exempted from FDUTPA application); *City of St. Petersburg v. Wachovia, N.A.*, 8:10-cv-693-T-26TBM, 2010 WL 2991431, at *3 (M.D. Fla. July 27, 2010) ("[I]t is clear that the FDUTPA does not apply to federally regulated banks such as Wachovia.").  Here, Plaintiff filed suit against Bank of America, N.A.  There is no dispute that "N.A." stands for national bank.  *George v. Wells Fargo Bank, N.A.*, No. 13-80776-CIV, 2014 WL 61487, at *5 (S.D. Fla. Jan. 8, 2014) ("Plaintiff has sued the entity 'Wells Fargo Bank, N.A.' There can be no dispute that 'N.A.' stands for 'National Bank.'").  Bank of America, N.A. ("BANA"), as a national bank regulated by federal agencies, is not subject to FDUTPA.  Accordingly, Plaintiff's FDUTPA claim must be dismissed.

**VI.     The RICO Claims Fail As A Matter of Law (Counts X and XI).**

In Counts X and XI, Plaintiff asserts claims under 18 U.S.C. §§ 1962(c) and 1962(d), respectively.  *See* Compl. at 13-14.  As set forth below, both claims are fatally deficient and must be dismissed with prejudice because amendment would be futile.

To establish a prima facie civil RICO claim, a plaintiff must allege: (1) a substantive predicate violation of 18 U.S.C. § 1962; (2) injury to his or her business or property; and (3) a causal connection between the racketeering activity and the injury.  *Avirgan v. Hull,* 932 F.2d 1572, 1577-78 (11th Cir. 1991).  Additionally, to establish a substantive violation of Section 1962, a plaintiff must allege that a "person" engaged in: "(1) [the] conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Jones v. Childers,* 18 F.3d 899, 910 (11th Cir. 1994).  Here, Plaintiff utterly fails to meet any pleading requirements for the RICO claims.

**A. Plaintiff Fails to Plead Predicate Acts with the Particularity Required by Rule 9(b).**

First, Plaintiff fails to plead sufficient facts that establish a predicate act in violation of 18 U.S.C. § 1962.  Predicate acts are specifically defined as the commission of certain identified federal crimes.  18 U.S.C. § 1961(1).  A court should dismiss a RICO complaint where it "provides a list of mailings and wires, without ever identifying any actual fraud." *Am. Dental Ass'n*, 605 F.3d at 1292; *see also Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (affirming dismissal of plaintiff's substantive RICO claims where complaint did not allege that defendants made any affirmative misrepresentations in the mailings).  Here, because the predicate acts underlying Plaintiff's RICO claim are premised on wire fraud, Rule 9(b)'s heightened pleading standard applies.  To comply, a plaintiff must allege "'(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud.'" *Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1218 (S.D. Fla. 2020) (quoting *Am. Dental Ass'n*, 605 F.3d at 1291); *see also Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1233-34 (S.D. Fla. 2017) (same).

In this case, Plaintiff has attempted to plead that BANA committed patterns of one substantive RICO predicate act: wire fraud.  *See* Compl. at 14.  Specifically, Plaintiff alleges that BANA engaged in two telephonic calls that triggered the wire fraud predicate —a March 10, 2026 call in which BANA allegedly denied repossession claims, and an April 8, 2026 call in which it allegedly refused to disclose sale details. *Id.* at 14-15.  Neither call constitutes wire fraud.  Claims for wire fraud require that BANA make a false statement over a wire.[4]   Furthermore, wire fraud

---

[4] *See* 18 U.S.C. § 1343 (prohibiting wire fraud by sending a false statement over a wire with intent to defraud).

16

requires: (1) a scheme to defraud; (2) use of interstate wires in furtherance of the scheme; and (3) specific intent to defraud. 18 U.S.C. § 1343. A bank's refusal to voluntarily produce records or its denial of claims on a phone call is not a "scheme to defraud." No specific misrepresentation is identified. No scheme is described. Thus, neither of the calls purportedly made by BANA support Plaintiff's allegations of wire fraud.

## B. Plaintiff Fails to Plead a RICO "Enterprise" Distinct from BANA.

Next, Plaintiff does not and cannot establish a RICO enterprise as required by § 1962(c). To state a claim under § 1962(c), a plaintiff must allege an "enterprise" that is distinct from the "person" alleged to have conducted the enterprise's affairs. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1355 (11th Cir. 2016) ("Significantly, to state a civil RICO claim, a plaintiff must establish a distinction between the defendant "person" and the "enterprise" itself."). While a corporation can in some cases simultaneously be a defendant and an enterprise, the enterprise must still be an "association-in-fact" distinct from the RICO person. *Id.*

Here, the Complaint names BANA as the defendant and conflates it with the alleged "enterprise" of Steven Ivankovich, BlueWater Reel Estate LLC, David Hunter, and related entities. Compl. at 14. The Complaint fails to allege any facts demonstrating that BANA was a member of this alleged enterprise, as opposed to merely a bank that independently exercised its contractual remedies. No factual nexus is alleged between BANA and the individuals comprising the supposed enterprise. Furthermore, the Complaint itself merely alleges that BANA exercised its contractual rights at a time when other unrelated parties were also pursuing claims against Plaintiff—that is not an enterprise.

## C. Plaintiff Fails to Plead a "Pattern" of Racketeering Activity.

Lastly, Plaintiff fails to show any "pattern of racketeering activity." 18 U.S.C. § 1962(a)-

17

(c). A "pattern of racketeering activity" is comprised of at least two predicate acts of racketeering activity that occurred within ten years of each other. *See* 18 U.S.C. § 1961(5); *Am. Dental Ass'n*, 605 F.3d at 1290 ("In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity.").

Two telephone calls in which a bank declines to provide information do not satisfy either the "relatedness" or "continuity" requirements. Even if one call could somehow be characterized as a predicate act (which it cannot), "this could constitute only one predicate act—still insufficient to establish the pattern of racketeering activity required for RICO liability." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1217 (11th Cir. 2020). Because the substantive RICO claim fails, the conspiracy claim necessarily fails.

**VII.    The Declaratory Judgment Claim (Count IX) Must be Dismissed.**

Plaintiff's final count, Count IX, seeks a declaratory judgment that Plaintiff owes no deficiency. This claim fails on its face because no deficiency has been asserted by BANA. Under 28 U.S.C. § 2201, a declaratory judgment requires an "actual controversy." *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-27 (2007). Accordingly, this Court should decline to exercise jurisdiction over this premature claim.

**VIII.    The Complaint Constitutes an Impermissible Shotgun Pleading.**

Notwithstanding the deficiencies set forth above, the Complaint is also a shotgun pleading and must be dismissed. The Eleventh Circuit has identified four categories of shotgun pleadings, the most common type being "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).

Here, the Complaint incorporates by reference all prior paragraphs into each successive count and is replete with irrelevant factual allegations concerning unrelated litigation, foreclosures, and an alleged enterprise involving parties with no connection to BANA. *See* Compl. at 10-15. These characteristics render the Complaint noncompliant with Rule 8.  Accordingly, the Complaint should be dismissed as a shotgun pleading.

**CONCLUSION**

WHEREFORE, for the above reasons and authorities, Defendant Bank of America, N.A. requests that the Court grant this Motion and dismiss Plaintiff's Complaint in its entirety, with prejudice, and grant such further relief as this Court deems just and proper.

**LOCAL RULE 7.1(a)(3) CERTIFICATION**

Counsel for Defendant Bank of America, N.A. hereby certifies that conferral for this motion is not required by the Local Rules because the motion seeks to dismiss the Complaint.

Dated: July 15, 2026

Respectfully submitted,

*/s/ Jason R. Bowyer*
Jason R. Bowyer (Lead Counsel)
Florida Bar No. 0693731
jbowyer@mcguirewoods.com
flservice@mcguirewoods.com
Steffanny Acevedo-Perez
Florida Bar No. 1074628
sacevedo@mcguirewoods.com
fladmin@mcguirewoods.com
**McGuireWoods LLP**
50 North Laura Street, Suite 3300
Jacksonville, Florida 32202
(904) 798-3200
(904) 798-3207 (fax)
*Attorneys for Bank of America, N.A.*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed

with the Clerk of the Court using CM/ECF on July 15, 2026.  I also certify that the foregoing

document is being served this day July 15, 2026 via U.S. Mail on the following:

Charles Jacob Stratmann
850 NE 3rd Street
Suite 208
Dania Beach, FL 33004
*Pro Se Plaintiff*

*/s/ Jason R. Bowyer*
Attorney
