IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
Case No. 0:26-cv-61090-DIMITROULEAS/STRAUSS

CHARLES JACOB STRATMANN,

Plaintiff,

v.

BANK OF AMERICA, N.A.,

Defendant.

_____/

FILED BY VB D.C.

JUL 29 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Charles Jacob Stratmann ("Plaintiff" or "Stratmann"), proceeding pro se, files this First Amended Complaint against Defendant Bank of America, N.A. ("BANA" or "Defendant") pursuant to Federal Rule of Civil Procedure 15(a)(1)(B), and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action for damages and declaratory relief arising from BANA's unauthorized private sale of Plaintiff's 2022 RAM 3500 pickup truck (VIN: 3C63R3HL2NG421618) (the "Vehicle") without notice, its subsequent concealment of sale terms and buyer identity, its reversal of legitimate fraud chargebacks to benefit enterprise participants, its damage to a Mercedes-Benz Sprinter van (VIN: W1Y4DBHYXMT063490) (the "Sprinter") during repossession and subsequent denial of Plaintiff's property-damage claim, and its participation in a coordinated multi-asset liquidation campaign targeting Plaintiff's economic foundations. Plaintiff seeks compensatory and treble damages under Florida's UCC Article 9 (Fla. Stat. Chapter 679), the Florida Consumer Collection Practices Act ("FCCPA"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d).

## II. JURISDICTION AND VENUE

2. This Court has original jurisdiction under 28 U.S.C. § 1331 (federal question -- RICO) and supplemental jurisdiction over state-law claims under 28 U.S.C. § 1367.

3. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Broward County, Florida, within the Fort Lauderdale Division of the Southern District of Florida.

4. The amount in controversy exceeds $75,000, exclusive of interest and costs.

## III. PARTIES

5. Plaintiff Charles Jacob Stratmann is a natural person and resident of Fort Lauderdale, Broward County, Florida. He brings this action in his individual capacity as co-borrower on the vehicle financing agreements, credit victim, and injured party. He does not bring this action on behalf of Starboard Yacht Group LLC or any entity.

6. Defendant Bank of America, N.A. ("BANA") is a national banking association with its principal place of business in Charlotte, North Carolina. BANA does business throughout the State of Florida, including in Broward County, and is subject to this Court's jurisdiction.

## IV. FACTUAL ALLEGATIONS

### A. The Vehicle and Financing Relationship

7. On or about December 30, 2022, Plaintiff co-signed a vehicle financing agreement with BANA (funded December 29, 2022) for the purchase of a 2022 RAM 3500 Laramie Mega Cab 4x4 pickup truck (the "Vehicle"), VIN 3C63R3HL2NG421618, at University Dodge, Davie, Florida. The Vehicle was used in Plaintiff's marine service business operations.

8. Plaintiff was a co-borrower on the financing agreement. BANA held a purchase money security interest in the Vehicle under Florida's UCC Article 9.

9. At all relevant times, Plaintiff maintained multiple deposit accounts and credit relationships

with BANA.

**B. The Chargeback Fraud -- BANA's First Enterprise-Enabling Act**

10. In 2022-2023, Starboard Yacht Group LLC ("SYG") -- of which Plaintiff is the sole managing member -- performed vessel refit services at Safe Harbor Lauderdale Marine Center ("SHM/LMC"), a facility controlled by the Ivankovich enterprise.

11. SHM/LMC systematically misdirected approximately $455,000 in payments made by SYG, crediting them to Contessa Marine Research LLC ("CMR") -- an Ivankovich-controlled entity -- rather than to SYG's account. This billing manipulation was confirmed by forensic accounting and by Anthony Ivankovich's sworn testimony at trial on February 23, 2026. (Tr. 122:3-6, 123:4-6.)

12. In November 2023, Plaintiff filed chargebacks through American Express totaling $113,217.04 (Dispute Refs: D-51423289, D-51423290) for payments misdirected by SHM/LMC. American Express investigated and allowed the chargebacks, confirming billing fraud.

13. In December 2023, Plaintiff filed substantially identical chargebacks through BANA totaling $113,285.15 ($52,857.36 + $60,427.79) for the same type of misdirected payments to SHM/LMC.

14. BANA reversed both chargebacks, returning the funds to SHM/LMC -- the same entity that American Express had determined engaged in billing fraud. BANA acted against Plaintiff's interest and in favor of the enterprise participant.

15. The AmEx/BANA divergence is dispositive: identical billing fraud reported to two financial institutions -- AmEx confirms fraud and allows chargebacks; BANA reverses chargebacks and returns funds to the enterprise. The statistical probability of this divergence being coincidental is negligible.

**C. The IC3 Fraud Events -- Temporal Correlation with Chargebacks**

16. Plaintiff has been the target of three documented Internet Crime Complaint Center ("IC3") incidents demonstrating enterprise-coordinated cyber fraud:

a. IC3 #1 (October 2022): Identity theft and account takeover, occurring during the initial phase of SYG's business relationship with SHM/LMC. Loss: approximately $3,200.

b. IC3 #2 (November 2023): Wire fraud totaling $128,678, occurring within days of Plaintiff's AmEx chargeback filings against SHM/LMC. The temporal proximity -- chargebacks filed, then six-figure wire fraud -- demonstrates retaliatory escalation.

c. IC3 #3 (May 3, 2024): Vishing (voice phishing) attack resulting in $11,456 loss. The attacker demonstrated knowledge of: (i) security question answers verified as NOT compromised in any known public data breach (per haveibeenpwned.com); (ii) account history details; (iii) family member names. BANA Fraud Claim No. 03MAY2024-623435.

17. The IC3 #3 attack occurred approximately 18 days after CMR's counsel of record (Akerman LLP, through James Rogers and Sean Cichowski) produced a 903-page BANA subpoena response (DE 269-1, D-71 in Case No. 0:23-cv-61696-AHS) containing Plaintiff's account security questions, account history, routing information, and wire transfer patterns. This production was made to: (i) Steven Ivankovich; (ii) Dr. Anthony Ivankovich; (iii) Moore & Company (Michael Moore, Daniel Morales); (iv) Akerman LLP (James Rogers, Sean Cichowski, Amanda Klopp); and (v) Safe Harbor Lauderdale Marine Center.

18. The sole plausible exposure pathway for the IC3 #3 attacker's knowledge of Plaintiff's security answers is the CMR discovery production -- no other known source contained this information.

**D. The Unauthorized Vehicle Disposition**

19. On or about November 15, 2025, BANA's repossession apparatus was already active against the Vehicle. A contemporaneous email titled "FW: RAM 3500 PAYMENT ERRORS,

BILLING AND NOTICES" documents BANA's repossession hotline (877-243-5796, Option 1) in connection with the RAM 3500 account, confirming that BANA was pursuing disposition at least four months before consummating the April 8, 2026 sale -- and eight days after Plaintiff transmitted the November 7, 2025 litigation-hold demand.

20. On or about March 10, 2026, Plaintiff contacted BANA regarding the Vehicle. A BANA representative stated the Vehicle "was being sold today" while simultaneously refusing to disclose any terms of the disposition, the buyer's identity, or the sale price. When Plaintiff requested documentation of the sale, BANA stated Plaintiff would need to "litigate" to obtain any records.

21. On or about April 7, 2026, a BANA representative stated Plaintiff "could have purchased the vehicle yesterday" -- confirming the right of redemption had been extinguished without any notice to Plaintiff.

22. On April 8, 2026, Plaintiff again contacted BANA and was informed the sale was occurring "today." BANA refused to disclose the buyer's identity, sale price, or any disposition details, and refused to provide any documentation.

23. At no time did BANA send Plaintiff any notification of the intended disposition of the Vehicle as required by Florida Statutes § 679.611.

24. At no time did BANA provide Plaintiff with at least ten (10) days' advance notice before the disposition as required by Florida Statutes § 679.612.

25. The disposition was conducted through a closed, dealer-only channel that excluded Plaintiff from participation. BANA has never disclosed the buyer's identity, sale price, or terms of the disposition.

**D-1. The Sprinter Van -- Repossession Damage and Denial of Property-Damage Claim**

25A. In addition to the Vehicle (RAM 3500, Account 2108), BANA held a security interest in a Mercedes-Benz Sprinter van, VIN W1Y4DBHYXMT063490 (the "Sprinter"), Account ending

1321.

25B. Prior to the repossession, Plaintiff was actively executing a liquidation plan to sell the Sprinter at fair market value and apply the proceeds toward the RAM 3500 obligation (Account 2108). BANA's third-party recovery agent, Heat Recovery & Towing of Miami, repossessed the Sprinter from Harbour Towne Marina (Suntex), Dania Beach, Florida, in February 2026 without prior notice to Plaintiff. On February 26, 2026, Plaintiff paid off the remaining balance on Account 1321 in the amount of $11,941.73 to obtain title release, as confirmed by BANA's zero-balance letter generated March 9, 2026 (Exhibit __).

25C. During the repossession and recovery process, Heat Recovery & Towing of Miami damaged the Sprinter's driveshaft and drivetrain. The damage occurred during the towing or transport of the vehicle and was not pre-existing. Plaintiff photographed the damage on February 26, 2026, the same day Plaintiff paid off the loan.

25D. On March 3, 2026, Plaintiff transmitted a formal written damage claim to BANA's Repo Claims unit (repoclaims@bofa.com) documenting the driveshaft damage caused by Heat Recovery & Towing. On March 12, 2026, Plaintiff transmitted a follow-up demand with photographic evidence via email and fax to BANA's Post Charge-Off Repossession Department (Fax: (866) 206-0530), demanding a response by March 19, 2026, preservation of all repossession records, and processing of the damage claim (Exhibit __).

25E. After transmitting the foregoing demand, Plaintiff received a return telephone call from a BANA representative. During that call, the representative advised Plaintiff that: (a) BANA was denying the property-damage claim for the Sprinter; (b) BANA could not and would not reconsider the claim of negligence and property damage caused by its third-party recovery agent; and (c) if Plaintiff sought recovery for the damage or access to repossession, recovery, or heat-recovery records, Plaintiff would be required to initiate litigation -- i.e., "sue them."

25E-1. As a direct result of the driveshaft damage caused by BANA's recovery agent, Plaintiff was forced to sell the Sprinter back to Mercedes-Benz at a price approximately $10,000 less than the vehicle's pre-damage fair market value. Plaintiff's intended liquidation plan -- selling

the Sprinter at full value and applying the proceeds toward Account 2108 (RAM 3500) -- was materially impaired by: (a) the $10,000 diminution in value caused by the driveshaft damage; (b) the delay in title release following payoff, during which the vehicle continued to depreciate; and (c) the interference with Plaintiff's ability to execute a timely resolution of the RAM 3500 obligation before BANA disposed of that vehicle.

25F. BANA's denial of the property-damage claim and refusal to produce recovery records is consistent with its identical conduct regarding the RAM 3500 (Account 2108) and demonstrates a pattern of: (a) using third-party recovery agents who damage collateral during repossession; (b) refusing to accept responsibility for that damage; (c) refusing to produce records of the recovery agent's conduct; and (d) forcing borrowers to litigate for access to records BANA is obligated to maintain.

## E. Actual Written Notice of Pending Proceedings

26. Prior to the Vehicle's disposition, BANA received actual written notice of pending federal proceedings involving the Vehicle through multiple channels, with confirmed delivery:

> a. November 7, 2025: Litigation-hold demand letter identifying the Vehicle as evidence in pending federal proceedings;

> b. March 6, 2026, 3:18 PM UTC: Email to BANA's Repossession Claims department (repoclaims@bofa.com) and named BANA representatives (michael.clientcare@bofa.com; ashley.clientcare@bofa.com), subject: "URGENT: DEMAND FOR AUCTION HOLD -- RAM 3500 VIN 3C63R3HL2NG421618 -- Value Impairment Notice," with attachment "RAM3500_VALUE_IMPAIRMENT_NOTICE_20260306.pdf." None of these transmissions were returned as undeliverable;

> c. March 6, 2026 -- Seven (7) confirmed facsimile transmissions to BANA: Plaintiff transmitted demands via Fax.Plus digital gateway to three separate BANA fax numbers, each confirmed by automated delivery receipt:

- (i) March 6, 2026, 00:10 UTC -- to +1 (980) 233-7070 (BANA Legal Order Processing) -- successfully sent (confirmation: report-fax-to-19802337070.pdf);

- (ii) March 6, 2026, 01:39 UTC -- to +1 (980) 233-7070 -- successfully sent (same confirmation format);

- (iii) March 6, 2026, 03:17 UTC -- to +1 (866) 206-0530 (BANA alternative fax) -- successfully sent (confirmation: report-fax-to-18662060530.pdf);

- (iv) March 6, 2026, 14:14 UTC -- to +1 (980) 386-6699 (BANA Corporate HQ) -- successfully sent (confirmation: report-fax-to-19803866699.pdf);

- (v) March 6, 2026, 15:36 UTC -- to +1 (980) 233-7070 -- successfully sent;

- (vi) March 6, 2026, 15:42 UTC -- to +1 (980) 386-6699 -- successfully sent;

- (vii) March 6, 2026, 15:46 UTC -- to +1 (980) 233-7070 -- successfully sent;

d. March 6, 2026, 14:13 UTC: Email to michael.clientcare@bofa.com (CC: ashley.clientcare@bofa.com), subject: "EXECUTIVE ESCALATION -- BofA Hardship / Reinstatement -- 9 Accounts -- Starboard Yacht Group," identifying all accounts including the Vehicle's account and demanding a litigation hold across the entire relationship;

e. April 8, 2026, 22:16 UTC: Email containing "STATUTORY PRE-SUIT DEMAND UNDER FDUTPA F.S. § 501.211(2) -- Bank of America Auto Loan Accounts," transmitted via fax language to BANA Legal Order Processing at (980) 233-7070, Corporate HQ at (980) 386-6699, Repossession/Recovery at 1-866-389-3891, and Customer Assistance at 1-866-453-4185;

f. April 8, 2026, 22:24 UTC: Fax.Plus delivery confirmation received: "Fax to +1 980-233-7070 successfully sent" -- confirming delivery of the FDUTPA pre-suit demand to BANA Legal Order Processing on the same day as the unauthorized Vehicle disposition;

g. April 8, 2026, 23:41 UTC: Email subject: "DEMAND FOR COOPERATION, EVIDENCE PRESERVATION, AND DISCLOSURE OF BUYER IDENTITY -- 2022

RAM 3500 (Account 2108, VIN 3C63R3HL2NG421618)" -- sent within hours of the sale, demanding buyer identity and preservation of all transaction records.

27. In total, between March 2 and April 8, 2026, Plaintiff transmitted no fewer than 102 written communications to BANA across email and facsimile channels, including facsimile transmissions to six separate BANA fax numbers -- seven of which produced automated "successfully sent" delivery confirmations from Fax.Plus -- and formal FDUTPA statutory pre-suit demands under Florida Statutes § 501.211(2). BANA's corporate email addresses (repoclaims@bofa.com, michael.clientcare@bofa.com, ashley.clientcare@bofa.com) accepted delivery of the critical Vehicle-specific demands without returning non-delivery receipts. The fax delivery confirmations constitute independent, machine-generated proof of receipt by BANA's fax systems.

28. Despite receiving these demands through multiple channels -- confirmed by seven automated fax delivery receipts and the absence of non-delivery receipts to the email addresses specified above -- BANA proceeded with the unauthorized disposition on April 8, 2026, destroyed the evidentiary value of the Vehicle, and concealed the transaction details. BANA's April 8 disposition occurred on the same day Plaintiff transmitted the FDUTPA pre-suit demand and the buyer-identity preservation demand, demonstrating that BANA either received and disregarded those demands or deliberately accelerated the sale to preempt them.

**F. Coordinated Multi-Account Pressure**

29. On or about the same date as the unauthorized Vehicle sale (April 8, 2026), BANA issued delinquency notices on a fourth vehicle financing agreement held by Plaintiff, creating simultaneous multi-account pressure. This coordinated timing demonstrates enterprise-aligned conduct rather than routine collection activity.

**G. The Enterprise**

30. The "enterprise" as used in this Complaint refers to an association-in-fact as defined by 18 U.S.C. § 1961(4), consisting of:

a. Steven Ivankovich -- enterprise principal;

b. Dr. Anthony Ivankovich (deceased June 8, 2026) -- enterprise principal;

c. Contessa Marine Research LLC ("CMR") -- litigation vehicle;

d. Safe Harbor Lauderdale Marine Center ("SHM/LMC") -- enterprise participant;

e. Akerman LLP (James Rogers, Sean Cichowski, Amanda Klopp, Jenna Yoss, Eyal Berger) -- multi-representation counsel facilitating coordinated attacks;

f. Moore & Company (Michael Moore, Daniel Morales) -- CMR counsel;

g. BlueWater Reel Estate LLC -- Ivankovich-controlled entity;

h. David Hunter -- enterprise participant.

31. This enterprise has conducted its affairs through a pattern of racketeering activity targeting Plaintiff and his business, including wire fraud, bank fraud, extortion, and obstruction of justice -- as alleged in the related action *Stratmann v. Seakeeper, Inc. et al.*, No. 0:25-cv-62237 (S.D. Fla.).

32. BANA is not alleged to be a member of the enterprise. BANA is alleged to be a "person" under 18 U.S.C. § 1961(3) who conducted or participated in the conduct of the enterprise's affairs through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(c).

## V. CLAIMS FOR RELIEF

### COUNT I -- Failure to Send Notification of Disposition (Fla. Stat. § 679.611)

33. Plaintiff incorporates paragraphs 1 through 32 by reference.

34. BANA held a security interest in the Vehicle.

35. BANA disposed of the Vehicle without sending any notification of disposition to Plaintiff as required by Fla. Stat. § 679.611(2)(b).

36. As a result of BANA's failure to provide notice, Plaintiff suffered damages including loss of the right to object to the disposition, loss of opportunity to participate, and destruction of evidentiary value.

**COUNT II -- Inadequate Notice Period (Fla. Stat. § 679.612)**

38. Plaintiff incorporates paragraphs 1 through 32 by reference.

39. Even if BANA sent notification (which is denied), BANA failed to provide at least ten (10) days' advance notice before the disposition as required by Fla. Stat. § 679.612(2).

40. BANA's own representative confirmed on April 7 that the Vehicle "could have been purchased yesterday" and on April 8 that the sale was happening "today" -- demonstrating zero days' advance notice.

41. As a result, Plaintiff was deprived of the statutory minimum notice period.

**COUNT III -- Commercially Unreasonable Disposition (Fla. Stat. § 679.610)**

42. Plaintiff incorporates paragraphs 1 through 32 by reference.

43. BANA conducted the disposition of the Vehicle in a commercially unreasonable manner by: (a) using a closed, dealer-only channel excluding the debtor; (b) refusing to disclose any terms of sale; (c) refusing to disclose the buyer's identity; (d) selling at an undisclosed price through an opaque process; and (e) conducting the sale while affirmatively denying Plaintiff information about his statutory rights.

44. BANA's course of conduct -- reversing legitimate chargebacks to favor enterprise participants, then disposing of Plaintiff's collateral through a closed channel while concealing all details -- establishes a pattern of commercially unreasonable conduct.

**COUNT IV -- Denial of Right of Redemption (Fla. Stat. § 679.623)**

45. Plaintiff incorporates paragraphs 1 through 32 by reference.

46. Plaintiff had a right to redeem the Vehicle by tendering fulfillment of all obligations secured by the collateral, plus reasonable expenses, at any time before the secured party disposed of the collateral. Fla. Stat. § 679.623.

47. BANA's own representative confirmed on April 7, 2026 that Plaintiff "could have purchased the vehicle yesterday" -- confirming Plaintiff's redemption right was viable until extinguished by the sale.

48. BANA extinguished Plaintiff's redemption right without providing the notice required to exercise it, thereby denying Plaintiff the statutory right of redemption.

**COUNT V -- Failure to Provide Accounting of Disposition (Fla. Stat. § 679.616)**

49. Plaintiff incorporates paragraphs 1 through 32 by reference.

50. After the disposition, a secured party must provide the debtor with an explanation of the calculation of a surplus or deficiency. Fla. Stat. § 679.616(1).

51. Plaintiff, through multiple telephone contacts (March 10, April 7, and April 8, 2026), requested information regarding the disposition -- including the sale price, buyer identity, and whether a surplus or deficiency existed.

52. BANA refused to provide any accounting of the disposition. BANA stated Plaintiff would need to "litigate" to obtain records.

53. BANA's refusal to provide an accounting violates § 679.616 and independently entitles Plaintiff to damages under § 679.625.

**COUNT VI -- Damages for Non-Compliance with Article 9 (Fla. Stat. § 679.625)**

54. Plaintiff incorporates paragraphs 1 through 32 and Counts I through V by reference.

55. BANA's non-compliance with its obligations under Chapter 679 entitles Plaintiff to recover actual damages suffered as a result of the non-compliance, plus statutory damages. Fla. Stat. § 679.625(2).

56. Plaintiff's actual damages include: (a) the fair market value of the 2022 RAM 3500

($55,000 - $60,000 based on comparable sales); (b) loss of the right of redemption, including documented redemption opportunities that BANA calculated but Plaintiff was denied; (c) impaired evidentiary position in five separate pending proceedings; (d) consequential economic harm from the simultaneous multi-account pressure campaign; (e) lost Lemon Law / FCA manufacturer-remedy value -- BANA's premature disposition of the Vehicle destroyed Plaintiff's pending Lemon Law claim and eliminated buyback, repurchase, and defect-resolution leverage that existed at the time of sale; (f) Sprinter liquidation impairment -- BANA's recovery agent damaged the Sprinter's driveshaft during repossession, reducing its liquidation value and impairing Plaintiff's planned strategy to sell the Sprinter and apply proceeds toward Account 2108; (g) increased financing costs resulting from the loss of collateral and impairment of creditworthiness; (h) lost settlement leverage -- BANA's disposition eliminated Plaintiff's negotiating position for account resolution across multiple vehicles; and (i) payment-confusion damages -- BANA's maintenance of multiple RAM 3500 accounts (including Accounts ending 2108 and 9899) created payment-allocation confusion that contributed to the alleged default and impaired Plaintiff's ability to cure.

**COUNT VII -- Florida Consumer Collection Practices Act (Fla. Stat. § 559.72)**

57. Plaintiff incorporates paragraphs 1 through 32 by reference.

58. BANA's conduct constitutes unfair and unconscionable means of collecting a consumer debt in violation of Fla. Stat. § 559.72, including: (a) misrepresenting the status and terms of the disposition during telephone calls; (b) refusing to provide legally required disclosures while simultaneously pressuring multiple accounts; (c) issuing delinquency notices on additional vehicles on the same day as the unauthorized sale, creating coercive multi-account pressure; (d) stating Plaintiff would need to "litigate" to obtain records he was legally entitled to receive; and (e) denying Plaintiff's property-damage claim for the Sprinter (driveshaft damaged by BANA's own recovery agent), refusing to reconsider the claim, and telling Plaintiff to "sue them" -- forcing litigation as a precondition to any remedy for BANA's own agent's negligence.

**COUNT VIII -- Declaratory Judgment (28 U.S.C. § 2201)**

59. Plaintiff incorporates paragraphs 1 through 32 by reference.

60. An actual controversy exists between Plaintiff and BANA regarding whether any deficiency balance is owed following BANA's non-compliant disposition of the Vehicle.

61. Given BANA's failure to comply with the notice, commercial reasonableness, and accounting requirements of Chapter 679, Plaintiff is entitled to a declaratory judgment that: (a) no deficiency balance is owed to BANA; (b) BANA's security interest in the Vehicle has been extinguished by its non-compliant conduct; and (c) any surplus from the sale belongs to Plaintiff.

## COUNT IX -- RICO (18 U.S.C. § 1962(c))

62. Plaintiff incorporates paragraphs 1 through 32 by reference.

63. BANA is a "person" within the meaning of 18 U.S.C. § 1961(3).

64. The Ivankovich association-in-fact enterprise described in paragraph 30 is an "enterprise" within the meaning of 18 U.S.C. § 1961(4), engaged in and whose activities affect interstate commerce.

65. BANA participated in the conduct of the enterprise's affairs through a pattern of racketeering activity consisting of the following predicate acts:

Wire Fraud Predicate Acts (18 U.S.C. § 1343):

a. March 10, 2026 -- Telephonic misrepresentation: BANA stated, via telephone (interstate wire), that Plaintiff would need to "litigate" to obtain disposition records -- concealing BANA's statutory obligation under § 679.616 to provide an accounting, and preventing Plaintiff from exercising his right of redemption during the pre-sale period. Speaker: BANA customer service representative. Time: during business hours. Method: telephone call to BANA's customer service line.

b. April 8, 2026 -- Telephonic misrepresentation: BANA stated, via telephone (interstate wire), that the Vehicle sale was happening "today" and that Plaintiff "could have purchased the vehicle yesterday" -- an affirmative misrepresentation designed to convey that the sale was inevitable and Plaintiff's participation was impossible, while concealing the sale's terms, buyer identity, and price. Speaker: BANA customer service representative. Time: during business hours. Method: telephone call to BANA's customer service line.

Bank Fraud Predicate Acts (18 U.S.C. § 1344):

c. December 2023 -- Chargeback reversal: BANA reversed two legitimate chargebacks totaling $113,285.15, returning funds to SHM/LMC -- an enterprise participant -- after American Express had independently confirmed billing fraud by the same entity for the same transactions. This reversal constitutes knowing facilitation of the enterprise's financial scheme through a financial institution.

Sprinter Repossession -- Damage and Denial:

d. March 3-12, 2026 -- Sprinter repo-claims demand and denial: Plaintiff transmitted a formal written damage claim on March 3, 2026, followed by a supplemental demand with photographic evidence on March 12, 2026, to BANA's Post Charge-Off Repossession Department concerning the Sprinter (VIN W1Y4DBHYXMT063490), addressing driveshaft and drivetrain damage caused by BANA's contracted recovery agent, Heat Recovery & Towing of Miami, during repossession from Harbour Towne Marina. BANA's representative responded via telephone (interstate wire) by denying the property-damage claim, stating BANA could not and would not reconsider claims of negligence and property damage by its recovery agent, and directing Plaintiff to initiate litigation -- concealing BANA's vicarious liability for its agent's tortious conduct and its obligation under Fla. Stat. § 679.610 to conduct repossession without breach of the peace or damage to collateral.

IC3 Event -- Exploitation of BANA-Produced Discovery Data:

e. May 3, 2024 -- IC3 #3 Vishing: The IC3 #3 vishing attack exploited security information contained in BANA's 903-page subpoena response (DE 269-1, D-71 in Case No. 0:23-cv-61696-AHS), which BANA produced to the enterprise participants. The attacker used information available exclusively through that discovery production. BANA Fraud Claim No. 03MAY2024-623435. BANA's production of this sensitive security data to known enterprise participants, without adequate safeguards, enabled the fraud.

66. The predicate acts are related -- they share the same purpose (destroying Plaintiff's economic foundations and concealing the enterprise's asset-liquidation campaign), the same victim (Plaintiff), and the same method (institutional action coordinated with enterprise objectives). The pattern extends from November 2023 (chargeback reversal) through April 8, 2026 (vehicle disposition) -- a period exceeding two years with ongoing concealment.

67. BANA's participation in the enterprise's affairs satisfies the *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993) "operation or management" test: BANA directed the specific transactions (chargeback reversals, vehicle disposition) that advanced the enterprise's objectives, and did so with actual notice of the enterprise's existence (per the litigation-hold demands).

68. Plaintiff suffered concrete injury as a direct and proximate result of BANA's racketeering activity, including: loss of $113,285.15 in reversed chargebacks; $11,456 from IC3 #3 enabled by BANA's discovery production; loss of the Vehicle (valued at $55,000-$60,000); driveshaft damage to the Sprinter caused by BANA's recovery agent during repossession; destruction of evidentiary position; impaired ability to prosecute pending claims; lost Lemon Law / FCA manufacturer-remedy value; lost Sprinter liquidation proceeds due to recovery-agent damage; increased financing costs; lost settlement and account-resolution leverage; and additional litigation costs incurred to pursue discovery of records BANA was statutorily obligated to produce. Total quantifiable damages exceed $180,000.

69. Plaintiff is entitled to treble damages under 18 U.S.C. § 1964(c).

**COUNT X -- RICO Conspiracy (18 U.S.C. § 1962(d))**

70. Plaintiff incorporates paragraphs 1 through 32 and paragraphs 62 through 69 by reference.

71. BANA knowingly agreed to facilitate the enterprise's scheme through: (a) reversing legitimate chargebacks to benefit enterprise participant SHM/LMC while American Express confirmed the same fraud; (b) producing Plaintiff's security data to known enterprise participants without safeguards; (c) receiving actual written notice of RICO proceedings and proceeding with the Vehicle disposition anyway; (d) deliberately withholding disposition details to prevent judicial scrutiny; (e) coordinating multi-account pressure on the same date as the Vehicle sale to maximize economic harm.

72. BANA's agreement to participate in the conspiracy is evidenced by its conduct -- a reasonable financial institution receiving two litigation-hold demands identifying active RICO proceedings would not proceed with an unauthorized private sale through a closed channel while concealing all details.

73. Plaintiff's injuries flow directly from BANA's overt acts in furtherance of the conspiracy. *See Beck v. Prupis*, 529 U.S. 494, 501 (2000).

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Award compensatory damages in an amount to be determined at trial, including the fair market value of the Vehicle, lost redemption value, consequential economic damages, and impaired litigation position;

B. Award treble damages under 18 U.S.C. § 1964(c) on the RICO claims (Counts IX and X);

C. Enter a declaratory judgment that Plaintiff owes no deficiency to BANA and that any surplus from the Vehicle disposition belongs to Plaintiff;

D. Award statutory damages under Fla. Stat. § 679.625;

E. Award actual damages under Fla. Stat. § 559.77 (FCCPA);

F. Award costs of suit;

G. Award damages for the Sprinter (VIN W1Y4DBHYXMT063490, Account ending 1321) including: (i) $10,000 diminution in value caused by BANA's recovery agent's driveshaft damage; (ii) depreciation losses during the title-release delay period; and (iii) consequential damages from interference with Plaintiff's liquidation plan to resolve the RAM 3500 obligation;

H. Order BANA to immediately identify the third-party recovery agent responsible for the Sprinter repossession and driveshaft damage, and to produce all repossession, recovery, heat-recovery, and disposition records for the Sprinter;

I. Grant such other and further relief as this Court deems just and equitable.

## VII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: July 29, 2026

/s/ Charles Jacob Stratmann
Charles Jacob Stratmann
Pro Se Plaintiff

545 NE 17th Avenue
Fort Lauderdale, FL 33301
Telephone: (954) 300-5383
Email: jake@starboardyacht.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing First Amended Complaint was served up

Jason R. Bowyer, Esq.
McGuireWoods LLP
50 North Laura Street, Suite 3300

Jacksonville, Florida 32202
jbowyer@mcguirewoods.com

Steffanny Acevedo-Perez, Esq.
McGuireWoods LLP
sacevedo@mcguirewoods.com

/s/ Charles Jacob Stratmann