**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO.: 0:26-cv-61090- DIMITROULEAS/STRAUSS**

CHARLES JACOB STRATMANN,

Plaintiff,

v.

BANK OF AMERICA, N.A.,

Defendant.
________________________________/

**BANK OF AMERICA, N.A.'S, MOTION TO DISMISS FIRST AMENDED COMPLAINT WITH INCORPORATED MEMORANDUM OF LAW**

Defendant Bank of America, N.A. ("BANA"), by and through its undersigned counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves to dismiss the First Amended Complaint and Demand for Jury Trial (the "Complaint") [D.E. 20] filed by *pro se* Plaintiff Charles Jacob Stratmann ("Plaintiff" or "Stratmann") in its entirety, with prejudice, and in support states as follows:

## INTRODUCTION

Plaintiff's Complaint is the second failed attempt by Plaintiff to state a cause of action under Florida and federal law. Attempting to circumvent the well-supported arguments in BANA's motion to dismiss the initial complaint, Plaintiff now proceeds under an amended pleading that addresses very few of the arguments raised in BANA's initial motion to dismiss, but rather once again attempts to turn a lawful repossession and private disposition of property into various unconnected causes of action.

In identical fashion to the first pleading, Plaintiff brings this action against BANA principally arising from BANA's alleged private disposition of a 2022 RAM 3500 pickup truck (VIN 3C63R3HL2NG421618) (the "Vehicle") after default on a commercial-use vehicle loan. The Vehicle secured Plaintiff's loan payment obligation under a Security Agreement, and the related terms and conditions governing the financing transaction (collectively, the "Security Agreement")[1].

The Complaint attempts to turn that straightforward secured-party disposition into ten separate causes of action: six under Florida's UCC Article 9 (Counts I–VI), one under the Florida Consumer Collection Practices Act ("FCCPA") (Count VII), declaratory relief under 28 U.S.C. § 2201 (Count VIII), and civil RICO claims under 18 U.S.C. §§ 1962(c) and (d) (Counts IX and X). But once again the Complaint does not confine itself to the Vehicle, the loan, or BANA's alleged disposition conduct. It now adds new incoherent allegations about chargeback reversals, an alleged fraud event, a different vehicle, and alleged unrelated enterprise claims. Those allegations obscure the limited transaction at issue and make it difficult for BANA to determine which allegations support which claims and what injury BANA supposedly caused.

Importantly however, the Complaint again fails to plead facts sufficient to state a cause of action. Even accepting Plaintiff's allegations as true for purposes of this Motion, the alleged failure to provide pre-disposition notice and the refusal to disclose sale details may, at most, implicate a limited Article 9 theory arising from the Vehicle disposition. They do not support six separate Article 9 counts, a federal racketeering theory based on unrelated chargebacks, repossession violations related to an entirely different vehicle, or an alleged illegal enterprise that the Complaint itself says BANA did not join; nor do they state a viable FCCPA or declaratory

[1] The Security Agreement and Terms and Conditions entered into by Bank of America, N.A. and Plaintiff Charles Jacob Stratmann is attached hereto as Exhibit A.

judgment claim. The Complaint's unrelated allegations, conclusory labels, and failure to identify the conduct, legal theory, and injury attributable to BANA render the pleading incoherent and deprive BANA of fair notice. Plaintiff has already amended his pleading, yet the Complaint does not cure these fundamental defects. Further amendment would therefore be futile. Accordingly, the Complaint should be dismissed in its entirety with prejudice.

## PROCEDURAL HISTORY

Plaintiff filed an initial complaint on April 14, 2026, asserting eleven separate causes of action against BANA on allegations that BANA improperly repossessed and disposed of the Vehicle that Plaintiff had defaulted on without notifying Plaintiff. *See* D.E. 1 at 9. BANA moved to dismiss the initial complaint. *See generally* D.E. 19. Rather than opposing BANA's motion, Plaintiff filed an amended pleading on July 29, 2026. *See generally* Compl. However, because the Complaint still does not allege sufficient facts to state any cognizable claim for relief, BANA moves to dismiss the Complaint with prejudice pursuant to Rule 12(b)(6).

## FACTUAL BACKGROUND[2]

### A. Plaintiff Financed the Purchase of the Vehicle Through BANA

On or about December 26, 2022, Plaintiff Charles Jacob Stratmann, acting as the Managing Member of Starboard Yacht Group LLC ("SYG"), purchased the Vehicle from Atlantic Coast Automotive, Inc. (d/b/a Rob Lambdin's University Dodge) in Davie, Florida. *Id.* ¶ 7. Plaintiff, individually and for the benefit of SYG, financed the purchase through a loan from BANA, ending in -2108 in the amount of approximately $93,239.32 (the "Loan"). *Id.* As collateral for the Loan, BANA was granted a security interest in the Vehicle. *Id.* Plaintiff, SYG, and BANA executed the Security Agreement which provides in relevant part:

---

[2] The "facts" in the First Amended Complaint are taken as true for the purposes of this Motion only.

> By Signing below, you agree to all the terms of this Note and request us to issue the loan. You acknowledge receiving a copy of this Note.
> …
>
> **NOTICE TO CONSUMER:** (1) Do not sign this Agreement before you read it; (2) You are entitled to a copy of this Note; (3) You may, at any time, prepay the unpaid balance of this Agreement without penalty.

*See* Ex. A at 3. Plaintiff, as co-borrower, and on behalf of himself and SYG, signed the Security Agreement acknowledging these terms and agreeing to abide by its Terms and Conditions, including the provisions governing default[3]:

> **Repossession of the Collateral For Failure to Pay**: If you fail to pay according to the payment schedule or if you break any of the agreements in this Note (default), we can take the Collateral from you (repossession) subject to any right to cure default you may have.
> …
> **Getting the Collateral Back After Repossession.** If we repossess the Collateral we will send you a notice of a sale disclosing that you have the right to redeem the Collateral by paying the accelerated balance and other costs of repossession. Under certain circumstances, you may have the right to reinstate the account by paying past due payments plus any late charges, the cost of taking and storing the Collateral and other expenses that we have incurred or charged allowed by law.

*Id.*

**B. Plaintiff Failed to Comply with His Payment Obligations, Resulting in Default**

Plaintiff subsequently failed to make the required payments on the Loan. As a result of Plaintiff's default, BANA exercised its rights as a secured creditor under the Security Agreement and Florida's UCC Article 9 to repossess the Vehicle. *See* Compl. ¶ 19. Notably, this was not an isolated incident-around this same time, BANA also repossessed another of Plaintiff's vehicles, a

[3] Under the Security Agreement, a default can occur for various reasons including if the borrower "fail[s] to make a payment in full when payment is due" or if they "fail to perform any obligation" that they undertook pursuant to the Security Agreement. *See* Ex. A at 3. Any default triggers BANA's contractual rights. *Id.*

Mercedes-Benz Sprinter van, due to his failure to make required loan payments and issued delinquency notices on yet another vehicle. *Id.* ¶¶ 25A-25B, 29. Following the repossession, BANA communicated with Plaintiff through various means, including emails and telephone calls, in which BANA informed Plaintiff of the default, repossession, and intended disposition of the Vehicle and advised Plaintiff that "he could have purchased the [V]ehicle" back prior to the disposition. *Id.* ¶¶19-22. Additionally, on or about November 15, 2025, a short time after the Vehicle had been repossessed by BANA, Plaintiff received an email titled FW: RAM 3500 PAYMENT ERRORS, BILLING AND NOTICES, which according to Plaintiff documented "BANA's repossession hotline" and "confirm[ed] that BANA was pursuing disposition at least four months before consummating" the sale of the Vehicle. *Id.* ¶19. Finally, on April 8, 2026, more than five months after repossessing the Vehicle and after Plaintiff failed to remit payment, BANA conducted a private sale of the Vehicle pursuant to its contractual rights under the Security Agreement and its disposition rights under Florida Statutes Section 679.610. *Id.* ¶22.

Despite BANA's lawful exercise of its contractual rights, Plaintiff alleges that he received no pre-disposition notification of the Vehicle's sale and that BANA refused to disclose the sale price, buyer identity, or other sale details. *Id.* ¶¶23-25. Specifically, the Complaint asserts ten counts alleging that BANA: (i) failed to send notice of disposition under § 679.611 (**Count I**); (ii) failed to provide reasonable advance notice under § 679.612 (**Count II**); (iii) conducted a commercially unreasonable disposition under § 679.610 (**Count III**); (iv) denied redemption under § 679.623 (**Count IV**); (v) failed to provide an accounting under § 679.616 (**Count V**); (vi) owes damages under § 679.625 for alleged Article 9 noncompliance (**Count VI**); (vii) violated the FCCPA (**Count VII**); (viii) seeks declaratory relief under § 2201 (**Count VIII**); (ix) violated RICO § 1962(c) (**Count IX**); and (x) conspired under RICO § 1962(d) (**Count X**). *Id.* ¶¶ 33–73.

In addition to these core allegations, the Complaint includes extensive allegations about unrelated transactions and parties. These include claims that: (a) BANA reversed 2023 chargebacks for payments allegedly made by SYG to a third party that purportedly facilitated an "enterprise" against Plaintiff; (b) BANA was involved in vishing attacks against Plaintiff; (c) BANA's recovery agent caused damage to another of Plaintiff's vehicles during repossession and (d) Plaintiff sent litigation-hold demands and other correspondence before the Vehicle sale. *Id.* ¶¶ 10–18, 25A-25F, 29-32. The Complaint also names an alleged enterprise but expressly alleges that BANA is not a member. *Id.* ¶32.

As demonstrated below, each of Plaintiff's claims fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

**LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

While the court must accept well-pleaded factual allegations as true, it need not accept "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor must the court "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Furthermore, for claims sounding in fraud, Federal Rule of Civil Procedure 9(b) imposes a

heightened pleading standard requiring that the plaintiff state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007)).

Although *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, a *pro se* plaintiff must still comply with procedural rules and pleading requirements. *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007).

## ARGUMENT

### I. Stratmann Lacks Standing to Assert Claims Belonging to SYG.

As an initial matter, Plaintiff still lacks standing to assert claims or recover damages that belong to SYG. Although the Complaint now alleges that Plaintiff sues only in his individual capacity and not on behalf of SYG, that allegation narrows, but does not cure, the standing defect for many of Plaintiff's purported theories including the chargeback and enterprise theories. *See* Compl. ¶5.

As a matter of law, a plaintiff may not recover for injuries to a separate legal entity or represent an LLC *pro se*. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1382,1385 (11th Cir. 1985) ("After reviewing the record we conclude first that, due to the general rule requiring corporations to be represented by counsel, [Plaintiff] may not represent the corporation in his *pro se* capacity…The rule is well established that a corporation is an artificial entity that can act only through agents, cannot appear *pro se*, and must be represented by counsel."); *see also Latele TV, C.A. v. Telemundo Communs. Grp.*, LLC, 9 F.4th 1349, 1360 (11th Cir. 2021) ("[i]t has been the law for the better part of two centuries ... that a corporation may appear in the federal courts only

through licensed counsel") (quotation omitted); Fla. Stat. § 605.0108(1) ("A limited liability company is an entity distinct from its members").

Here, the Complaint's chargeback allegations in Count IX identify SYG as the entity that made the payments and allegedly lost $113,285.15 when BANA reversed the chargebacks. Compl. ¶¶ 10–15; 65. Those alleged losses belong to SYG, not to Plaintiff. Plaintiff cannot disclaim "bring[ing] this action on behalf of Starboard Yacht Group LLC or any entity" while simultaneously seeking recovery for SYG's payments, business losses, or the alleged enterprise's injuries. *Id.* ¶ 5. Accordingly, to the extent the Complaint seeks to assert claims or recover damages belonging to SYG, as opposed to Plaintiff's own rights as an individual co-borrower, those claims should be dismissed or limited accordingly.

## II. SYG is a Required Party That Has Not Been Joined

Even if the Court were to conclude that Plaintiff could pursue some individual claims, the Complaint presents a separate Rule 19 issue to the extent Plaintiff contends that SYG's rights or injuries are at issue. Under Rule 19 of the Federal Rules of Civil Procedure, joinder is required, if feasible, of a person subject to service of process whose joinder would not deprive the Court of subject-matter jurisdiction when (A) complete relief cannot be accorded among existing parties in that person's absence or (B) the "person claims an interest relating to the subject of the action and is so situated that disposing of the action in that person's absence may: as a practical matter, impair or impede the person's ability to protect that interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1); *see also Santiago v. Honeywell Int'l, Inc.*, 768 F. App'x 1000, 1004 (11th Cir. 2019). If a required party has not been joined, the Court must order joinder. Fed. R. Civ. P. 19(a)(2) ("A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an

involuntary plaintiff."). Courts in the Eleventh Circuit apply Rule 19 pragmatically, focusing on the effect of the absent party's absence on the parties and the litigation. *In re Torcise*, 116 F.3d 860, 865 (11th Cir. 1997) ("[f]indings of indispensability must be based on stated pragmatic considerations, especially the effect on parties and on litigation.").

Here, the Complaint's chargeback allegations demonstrate why SYG's presence would be necessary if Plaintiff seeks entity-level relief. The Complaint alleges that SYG made approximately $113,285.15 in payments to a third party, that Plaintiff filed chargebacks through BANA, and that BANA reversed the chargebacks and returned the funds to the third party. Compl. ¶¶ 10–15, 65. Thus, the alleged payor and owner of the asserted chargeback loss is SYG, not Plaintiff individually. If Plaintiff seeks an adjudication that BANA wrongfully reversed SYG's chargebacks or an award for those losses, SYG has a direct interest in the subject of the action. Proceeding without SYG could impair its ability to protect that interest and could expose BANA to a substantial risk of multiple obligations arising from the same alleged payment losses. Fed. R. Civ. P. 19(a)(1)(B). To the extent the relief sought is for SYG's loss, the Court likewise cannot accord complete relief on that entity-level claim while the alleged injured party remains absent.

The same problem follows from the Complaint's vehicle and business allegations. The Complaint alleges that the RAM 3500 was used in Plaintiff's marine-service business, and it seeks the Vehicle's fair-market value and redemption value, lost manufacturer-remedy value, increased financing costs, lost settlement leverage, payment-confusion damages, and other losses tied to the disposition. Compl. ¶¶ 7, 56. If these alleged business injuries are injuries to SYG—or if Plaintiff contends that SYG owns, paid for, or holds rights in the collateral, accounts, or proceeds—SYG's rights are directly implicated. Plaintiff cannot obtain a judgment adjudicating those rights and damages while keeping SYG out of the case. Proceeding without SYG would create precisely the

prejudice Rule 19 is designed to avoid. Any adjudication of SYG's alleged injuries could impair SYG's ability to protect its own interests. It could also expose BANA to duplicative or inconsistent obligations if Plaintiff attempts to recover for SYG's alleged losses now and SYG later seeks to pursue its own claims through counsel. Plaintiff cannot avoid that problem by pleading that he proceeds only individually while simultaneously relying on SYG's alleged business injuries as damages. *See* Compl. ¶5. Accordingly, to the extent the Complaint seeks relief based on SYG's alleged business injuries, those theories should be dismissed or stricken.

## III. The Complaint Fails to Plead Facts Sufficient to State a Plausible Claim Under Article 9 (Counts I- VI).

Even if Plaintiff is deemed to have standing, the Article 9 counts (Counts I-VI) fail as pleaded. The Complaint's six Article 9 counts rest on the same conclusory assertion that BANA's post-default dispositions of the Vehicle violated Chapter 679. *See* Compl. ¶¶ 33-56. Counts I and II duplicate a single notice theory; Count III supplies labels but no facts showing a commercially unreasonable sale; Count IV alleges no tender; Count V conflates sale information requests with the post-disposition accounting required by § 679.616; and Count VI merely seeks derivative remedies under § 679.625. None of these counts state a plausible claim, and each should be dismissed with prejudice.

### a. Count I and II Are Duplicative Notice Theories and Do Not Support Separate Relief.

Counts I and II challenge the same alleged failure to give pre-disposition notice. Count I alleges that BANA sent no notification under § 679.611, while Count II alleges that BANA failed to provide a reasonable period under § 679.612. Compl. ¶¶ 33–41. However, since Plaintiff's UCC 9 allegations are all based on the alleged failure of BANA to provide *any* notification whatsoever, the alleged untimeliness claim (Count II) adds no separate substantive violation. *See* Compl. ¶ 23

("[A]t no time did BANA send Plaintiff any notification of the intended disposition of the Vehicle"). Section 679.612 **only** addresses the timing of a notification that is actually sent. *See* Fla. Stat. § 679.612. The two counts therefore should not support separate liability or duplicative damages. Accordingly, Counts I and II should be treated as a single notice-based Article 9 theory, with relief limited to the remedies available under § 679.625.

**b. Plaintiff's Article 9 Notice Claims Are Contradicted by His Own Allegations.**

The duplicative nature of Counts I and II is further confirmed by the Complaint's own allegations. Article 9 distinguishes between (i) the persons who must receive notification, (ii) the time by which notification must be sent, and (iii) the information the notification must contain. *See generally* Fla. Stat. §§ 679.601-679.628. Section 679.611 requires a secured party disposing of collateral to notify the debtor prior to the sale. *See Ampa Cap., Ltd. v. Rozen,* No. 12-60961-CIV-COHN, 2012 WL 6044299, at *3 (S.D. Fla. Dec. 5, 2012). Section 679.612 only addresses whether the notification was sent within a reasonable time.

Here, Count I alleges that BANA sent no notification under § 679.611, and Count II alleges that BANA failed to provide a reasonable period under § 679.612. *See* Compl. ¶¶ 23–24, 33–41. However, the Complaint's own factual narrative is inconsistent with the assertion that Plaintiff received no vehicle-specific communication before the sale. *See* Compl. ¶¶ 19-22. The Complaint specifically states that on November 15, 2025, an email titled "FW: RAM 3500 PAYMENT ERRORS, BILLING AND NOTICES" documented BANA's repossession hotline for the Vehicle and, by Plaintiff's own characterization, "confirm[ed] that BANA was pursuing disposition at least four months before the April 8, 2026 sale." *Id.* Furthermore, the Complaint also states that BANA communicated with Plaintiff through various means prior to the sale of the Vehicle, including emails and telephone calls, in which BANA informed Plaintiff of the default, repossession, and

intended disposition of the Vehicle and advised Plaintiff that "he could have purchased the [V]ehicle" back prior to the disposition. *Id.* ¶¶19-22. Plaintiff seems to rely on these communications as evidence of BANA's disposition activity while also pleading that no communication concerning disposition of the Vehicle occurred. Taken together, these allegations make an absolute no-notice theory implausible on the face of the Complaint.

**c. Plaintiff Fails to State a Commercial Unreasonableness Claim (Count III).**

Count III should be dismissed because the Complaint fails to allege facts establishing that BANA's disposition of the Vehicle departed from commercially reasonable practices under Fla. Stat. § 679.610. In Count III of the Complaint, Plaintiff alleges that the disposition of the Vehicle in a private sale was commercially unreasonable because BANA allegedly refused to disclose sale details, excluded Plaintiff from participating, used a closed dealer-only channel, and proceeded despite notice of an unresolved third-party damage claim. Compl. ¶ 43. However, those allegations alone do not make a private sale commercially unreasonable as a matter of law. Section 679.610 expressly permits a secured party to dispose of collateral through private proceedings if the disposition is commercially reasonable. Fla. Stat. § 679.610(2). Commercial reasonableness turns on the method, manner, time, place, and terms of the disposition, and a disposition may be commercially reasonable if made in the "usual manner in a recognized market, made at the price current in any recognized market at the time of the disposition, or otherwise in conformity with reasonable practices among dealers in the type of property being disposed." *Ford Motor Credit Co., LLC v. Arwine*, 276 So. 3d 275 (Fla. 1st DCA 2019). Generally, Florida courts treat notice as relevant to commercial reasonableness. *See Burley v. Gelco Corp.*, 976 So. 2d 97, 100 (Fla. 5th DCA 2008). However, this does not mean that allegations of lack of notice can serve as an independent basis for every category of damages Plaintiff seeks.

Here, Plaintiff does not allege any facts concerning the method employed by BANA, the prevailing commercial practices for disposition of repossessed vehicles, or any facts demonstrating that the disposition departed from accepted commercial practices. Compl. ¶¶ 42-44. Instead, Plaintiff concludes that the disposition was commercially unreasonable because BANA allegedly failed to disclose the terms of the sale, the price, and the buyer's identity. *Id.* However, Article 9 does not impose a statutory duty requiring a secured party to disclose private sale negotiations to a debtor nor does it permit the debtor to participate in a private disposition. Because Count III consists primarily of legal conclusions unsupported by factual allegations demonstrating that the method, manner, time, place or terms of the sale violated Article 9, Count III should be dismissed.

**d. Plaintiff Does Not Plead Tender Required For Redemption (Count IV)**

Count IV should also be dismissed because the Complaint does not allege that Plaintiff tendered the full amount required to redeem the Vehicle before BANA disposed of it. Count IV alleges denial of the right of redemption under § 679.623. Compl. ¶¶ 45-48. However, under Florida law, redemption requires tender of both "fulfillment of all obligations secured by the collateral" and the secured party's "reasonable expenses and attorney's fees." Fla. Stat. § 679.623(2); *see also In re Menasche*, 301 B.R. 757, 762 (Bankr. S.D. Fla. 2003) ("The Court concludes that Florida Statutes § 679.623 requirement to 'tender fulfilment of all obligations secured by the collateral' in order to redeem repossessed collateral, means to present payment of the entire balance in a lump sum."). The right may be exercised only before the secured party has collected the collateral, disposed of the collateral, entered a contract for disposition, or accepted the collateral in satisfaction of the obligation. *Id.*; *see also* § 679.623(3).

Here, the Complaint does not allege that Plaintiff tendered the full secured obligation and expenses before disposition, made an offer of tender, asked BANA to accept a statutory redemption

tender before disposition, or even had the present ability to tender. In fact, Plaintiff's original complaint admitted that he had "no liquid resources with which to exercise the statutory redemption right." D.E. 1 at 9. Furthermore, Plaintiff's allegation that a BANA representative said he "could have purchased the vehicle yesterday" does not plead a denial of redemption. Compl. ¶ 21. Article 9 required Plaintiff to tender the full secured obligation and expenses before disposition; it did not require BANA to provide a post-default installment purchase opportunity or extend the redemption period beyond the statutory cutoff. Accordingly, Count IV should be dismissed.

**e. Plaintiff's Fla. Stat. § 679.616 Claim Fails As a Matter of Law (Count V).**

Count V of the Complaint alleges that "BANA refused to provide any accounting of the disposition" in violation of Fla. Stat. § 679.616. Compl. ¶¶ 49-53. This claim fundamentally misunderstands the purpose and scope of Fla. Stat. § 679.616.

Section 679.616(1), titled "Explanation of calculation of surplus or deficiency," requires, after disposition and when the statutory conditions apply, an explanation of the calculation of a surplus or deficiency. Plaintiff seems to believe that Section 679.616 provides access to accounting information for any disposition. *See* Compl. ¶50. It does not. As written, it is limited to circumstances in which there is a surplus or deficiency after disposition of the collateral. *See generally* Fla. Stat. § 679.616. Furthermore, it does not transform every request for a buyer's identity, sale price, or disposition records into an accounting claim. Compl. ¶¶ 51. Instead, it is limited to an explanation of the monetary details of the transaction. *See generally* Fla. Stat. § 679.616.

Here, the Complaint alleges that Plaintiff contacted BANA to obtain information about the sale price, buyer identity, and whether a surplus or deficiency existed. Compl. ¶ 51. However, it

does not allege sufficient facts to show that the disposition of the collateral resulted in a surplus or that it resulted in a deficiency. Accordingly, Fla. Stat. § 679.616 does not apply.

**f. Plaintiff's Requests for Damages Fail As a Matter of Law (Count VI).**

Count VI, captioned as "Damages for Non-Compliance with Article 9" and brought under § 679.625, also fails as a matter of law. Compl. ¶¶ 54-56. Although Section 679.625 supplies remedies for proven noncompliance with Article 9, it does not create a substantive duty independent or separate source of liability. A plaintiff may only seek remedies under § 679.625 if he first establishes the underlying failure to comply with Article 9. Liability under § 679.625 is therefore derivative of the underlying violation of Article 9.

Here, the only Article 9 violations identified by Plaintiff are the notice, commercial-reasonableness, and redemption violations identified in Counts I through V. *Id.* ¶¶ 33-48. Count VI does not identify any other independent violation of Article 9. It merely incorporates the allegations of Counts I through V and alleges that Plaintiff suffered damages as a result of BANA's alleged noncompliant disposition. *Id.* ¶55 ("Plaintiff re-alleges and incorporates by reference all prior paragraphs and Counts I-V"). It identifies no additional wrongful conduct beyond the alleged statutory violations already asserted in the preceding counts. *Id.* Because Count VI seeks only to recover damages allegedly flowing from those same violations already pled in Counts I through V, it is a derivative of those claims and not a separate cause of action.

Even if Plaintiff's claims were not deemed duplicative, the damages Plaintiff seeks exceed what Article 9 permits. Section 679.625(3)(a) allows a debtor or obligor to recover damages under § 679.625(2) for that person's loss. Section 679.625(2) permits damages "in the amount of any loss caused by a failure to comply" with Chapter 679, but **specifically** excludes consequential, special, or penal damages unless independently recoverable under other Florida law. The special

statutory minimum in § 679.625(3)(b) applies only "[i]f the collateral is consumer goods." Because the Vehicle was acquired for business use, the consumer-goods statutory minimum is unavailable. Plaintiff's claimed consequential damages, impairment of unrelated claims, and other extra-Article 9 damages should therefore be dismissed or stricken from Counts I through VI.

**IV. Plaintiff's Claim For Violation Of The FCCPA (Count VII) Fails As A Matter Of Law.**

In Count VII, Plaintiff alleges that BANA violated the FCCPA by engaging in conduct that "constitutes unfair and unconscionable collection practices." *See* Compl. ¶¶ 57-58. This claim fails for multiple independent reasons.

Plaintiff broadly claims that BANA violated the FCCPA, however he does not point to any specific statutory provision that was violated. "To state a claim under the FCCPA, the plaintiff must allege facts plausibly suggesting '(1) the defendant is a person within the meaning of the FCCPA, (2) the defendant collected or attempted to collect a debt from the plaintiff, and (3) the defendant committed an act or omission prohibited by the FCCPA when it collected or attempted to collect the debt.'" *Gause v. Med. Bus. Consultants, Inc.*, 424 F. Supp. 3d 1175, 1203 (M.D. Fla. 2019) (quoting *Baumann v. Prober & Raphael*, No. 6:15-cv-1951-PGB-GJK, 2017 WL 10350673, at *2 (M.D. Fla. May 17, 2017). Furthermore, "to successfully assert a claim under the FCCPA, a plaintiff must allege a violation of a specific provision of the FCCPA." *Read v. MFP, Inc.*, 85 So. 3d 1151, 1155 (Fla. 2d DCA 2012).

The FCCPA lists "nineteen debt collection practices that violate the FCCPA," however, Plaintiff has failed to specify a single statutory violation. *Gause*, 424 F. Supp. 3d at 1203 citing Fla. Stat. § 559.72(1)–(19). Here, Plaintiff merely asserts that BANA's alleged conduct constituted "unfair and unconscionable practices." Compl. ¶58. The Complaint fails to identify which specific subsection of § 559.72 BANA allegedly violated. The conduct alleged by Plaintiff,

disposing of collateral and declining to produce records, does not correspond to any prohibited practice enumerated in the statute. Accordingly, Plaintiff's FCCPA claims should be dismissed with prejudice.

**V. The Declaratory Judgment Claim (Count VIII) Must be Dismissed.**

Plaintiff's eighth count, Count VIII, seeks a declaratory judgment that Plaintiff owes no deficiency. Compl. ¶¶ 59-61. This claim fails on its face because no deficiency has been asserted by BANA. The Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.* ("Act"), provides that a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). It is well established that while the Act gives federal courts the authority to make a declaration of rights, it does not impose a duty on federal courts to do so. *See First Mercury Ins. Co. v. Excellent Computing Distribs.*, 648 Fed. App'x 861, 865 (11th Cir. 2016). "An essential element for a declaratory judgment action is the existence of an 'actual controversy' between the parties." *Blitz Telecom Consulting, LLC v. Peerless Network, Inc.*, 151 F. Supp. 3d 1294, 1302 (M.D. Fla. 2015) (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–40 (1937)). In reviewing a declaratory action, a court considers "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Medlmmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Here, Plaintiff asserts that "[a]n actual controversy exists between Plaintiff and BANA regarding whether any deficiency balance is owed" following the sale of the Vehicle. Compl. ¶ 60. However, Plaintiff pleads no facts showing that BANA has asserted a deficiency, demanded payment of one, or calculated any deficiency. *Id.* ¶¶ 59-61. Indeed, the Complaint is devoid of

any allegation that BANA communicated with Plaintiff regarding a deficiency balance or took any action to pursue collection of any alleged deficiency. Plaintiff's speculative concern that a deficiency might be claimed at some point in the future is insufficient to establish the "immediacy and reality" required for declaratory relief. *See Medlmmune*, 549 U.S. at 127.

Accordingly, these allegations fail to give rise to the existence of a dispute upon which declaratory judgment may be granted. Courts consistently decline to issue declaratory judgments where, as here, the alleged controversy is based on hypothetical or speculative future events rather than a present, concrete dispute. *See Emory v. Peeler*, 756 F.2d 1547, 1552 (11th Cir. 1985) (noting that declaratory relief is inappropriate where the dispute is contingent or hypothetical.). Moreover, Plaintiff cannot manufacture an "actual controversy" by simply filing a preemptive lawsuit in anticipation of a claim that has not been made. *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed. Cir. 2008) (holding that there was no actual controversy where "[Plaintiff] argue[d] that a case and controversy [had] been created because [Defendant] ha[d] caused [Plaintiff] to suffer an actual harm—namely, paralyzing uncertainty from fear that [Defendant] will bring an infringement suit against it."). Because BANA has not asserted any deficiency, there is no ripe controversy for this Court to adjudicate, and the declaratory judgment claim should be dismissed.

**VI. The RICO Claims Fail As A Matter of Law (Counts IX and X).**

In Counts IX and X, Plaintiff asserts claims under 18 U.S.C. §§ 1962(c) and 1962(d), respectively. *See* Compl. ¶¶ 63-73. As set forth below, both claims are fatally deficient and must be dismissed with prejudice because amendment would be futile.

To establish a prima facie civil RICO claim, a plaintiff must allege: (1) a substantive predicate violation of 18 U.S.C. § 1962; (2) injury to his or her business or property; and (3) a

causal connection between the racketeering activity and the injury. *Avirgan v. Hull,* 932 F.2d 1572, 1577-78 (11th Cir. 1991). Additionally, to establish a substantive violation of Section 1962, a plaintiff must allege that a "person" engaged in: "(1) [the] conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Jones v. Childers,* 18 F.3d 899, 910 (11th Cir. 1994). Here, Plaintiff utterly fails to meet any pleading requirements for the RICO claims.

**A. Plaintiff Fails to Plead Predicate Acts with the Particularity Required by Rule 9(b).**

First, Plaintiff fails to plead sufficient facts that establish a predicate act in violation of 18 U.S.C. § 1962. Predicate acts are specifically defined as the commission of certain identified federal crimes. 18 U.S.C. § 1961(1). A court should dismiss a RICO complaint where it "provides a list of mailings and wires, without ever identifying any actual fraud." *Am. Dental Ass'n*, 605 F.3d at 1292; *see also Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007) (affirming dismissal of plaintiff's substantive RICO claims where complaint did not allege that defendants made any affirmative misrepresentations in the mailings). Here, because the predicate acts underlying Plaintiff's RICO claim are premised on wire fraud, Rule 9(b)'s heightened pleading standard applies. *See* Compl. ¶65. To comply, a plaintiff must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time and place of and person responsible for the statement; (3) the content and manner in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud." *Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1218 (S.D. Fla. 2020) (quotation omitted).

In this case, Plaintiff has attempted to plead that BANA committed patterns of one substantive RICO predicate act: wire fraud. *See* Compl. ¶ 65. Specifically, Plaintiff alleges that BANA engaged in two telephonic calls that triggered the wire fraud predicate —a March 10, 2026 call in which BANA allegedly denied repossession claims, and an April 8, 2026 call in which it

allegedly refused to disclose sale details. *Id.* Neither call constitutes wire fraud. Claims for wire fraud require that BANA make a false statement over a wire.[4] Furthermore, wire fraud requires: (1) a scheme to defraud; (2) use of interstate wires in furtherance of the scheme; and (3) specific intent to defraud. 18 U.S.C. § 1343. A bank's refusal to voluntarily produce records or its denial of claims on a phone call is not a scheme to defraud. No specific misrepresentation is identified. No scheme is described. Thus, neither of the calls purportedly made by BANA support Plaintiff's allegations of wire fraud.

**B. Plaintiff Fails to Plead a RICO "Enterprise" Distinct from BANA.**

Next, Plaintiff does not and cannot establish a RICO enterprise as required by § 1962(c). To state a claim under § 1962(c), a plaintiff must allege an enterprise that is distinct from the "person" alleged to have conducted the enterprise's affairs. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1355 (11th Cir. 2016) ("Significantly, to state a civil RICO claim, a plaintiff must establish a distinction between the defendant person and the enterprise itself."). While a corporation can in some cases simultaneously be a defendant and an enterprise, the enterprise must still be an "association-in-fact" distinct from the RICO person. *Id.* Furthermore, the defendant must participate in the operation or management of the enterprise itself. *See Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993) ("[O]ne is not liable under that provision unless one has participated in the operation or management of the enterprise itself."). An enterprise requires an ongoing organization, a common purpose, and associates functioning as a continuing unit that furnishes a vehicle for predicate crimes. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211-12 (11th Cir. 2020).

Routine banking services or an independent exercise of contractual remedies do not

[4] *See* 18 U.S.C. § 1343 (prohibiting wire fraud by sending a false statement over a wire with intent to defraud).

establish operation or management of another entity's affairs.

Here, the Complaint expressly acknowledges that BANA was not a member of the enterprise. *See* Compl. ¶ 32. Critically, the Complaint does not contain any factual nexus between BANA and the individuals comprising the supposed enterprise. The Complaint pleads no facts showing that BANA operated or managed the enterprise. It alleges no communications, coordination, or agreements between BANA and the supposed members of the enterprise. Instead, it strings together independent events: 2023 chargeback decisions, a 2024 third-party vishing incident, a 2026 vehicle repossession and claim denial, and the Vehicle's repossession and sale. *Id.* ¶¶ 65-66. However, the fact that BANA exercised its contractual rights at a time when other unrelated parties were also pursuing claims against Plaintiff is not sufficient to plead an enterprise.

**C. Plaintiff Fails to Plead a "Pattern" of Racketeering Activity.**

Lastly, Plaintiff fails to show any "pattern of racketeering activity." 18 U.S.C. § 1962(a)-(c). A "pattern of racketeering activity" is comprised of at least two predicate acts of racketeering activity that occurred within ten years of each other. *See* 18 U.S.C. § 1961(5); *Am. Dental Ass'n*, 605 F.3d at 1290 ("In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity.").

Two telephone calls in which a bank declines to provide information do not satisfy either the "relatedness" or "continuity" requirements. Even if one call could somehow be characterized as a predicate act (which it cannot), "this could constitute only one predicate act—still insufficient to establish the pattern of racketeering activity required for RICO liability." *Cisneros*, 972 F.3d at 1217. Furthermore, Plaintiff's allegations concerning chargeback reversal, alleged discovery-data exposure, unknown vishing attack, vehicle repossession, claim denial, and RAM disposition

involve different events, actors, assets, and theories, with no pleaded facts linking BANA to a common criminal objective. *See* Compl. ¶ 65. Because the substantive RICO claim fails, the conspiracy claim necessarily fails.

**VII. The Complaint Constitutes an Impermissible Shotgun Pleading.**

Notwithstanding the deficiencies set forth above, the Complaint is also a shotgun pleading and must be dismissed. The Eleventh Circuit has identified four categories of shotgun pleadings, the most common types being "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint" and a complaint which is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).

Here, the Complaint contains both types of defects. Each count of the Complaint incorporates by reference all preceding factual allegations, causing each successive claim to sweep in the entirety of Plaintiff's sprawling factual narrative. *See* Compl. ¶¶ 33,38,42,45,49,54,57,62,70. As a result, Counts I through X do not clearly identify which factual allegations support which particular claim for relief. BANA is therefore left to guess which allegations relate to the Article 9 notice claims, which allegations relate to the commercial-reasonableness claim, which allegations relate to the FCCPA claim, and which allegations supposedly support the RICO counts.

Furthermore, the Complaint is also replete with irrelevant factual allegations concerning unrelated litigation, chargebacks, unrelated vehicle repossessions, and an alleged enterprise involving parties with no connection to BANA. *See generally* Compl. Those allegations are not tied in any coherent way to the elements of the Article 9, FCCPA, declaratory judgment, or RICO counts. These characteristics render the Complaint noncompliant with Rule 8. The result is a

pleading that obscures the conduct actually attributable to BANA and makes it difficult to determine which facts are intended to support which claim for relief. Accordingly, the Complaint should be dismissed as a shotgun pleading.

## CONCLUSION

WHEREFORE, for the above reasons and authorities, Defendant Bank of America, N.A. requests that the Court grant this Motion and dismiss Plaintiff's Amended Complaint in its entirety, with prejudice, and grant such further relief as this Court deems just and proper.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for Defendant Bank of America, N.A. hereby certifies that conferral for this motion is not required by the Local Rules because the motion seeks to dismiss the Amended Complaint.

Dated: August 12, 2026

Respectfully submitted,

By: */s/ Jason R. Bowyer*

Jason R. Bowyer (Lead Counsel)
Florida Bar No. 0693731
jbowyer@mcguirewoods.com
flservice@mcguirewoods.com
Steffanny Acevedo-Perez
Florida Bar No. 1074628
sacevedo@mcguirewoods.com
fladmin@mcguirewoods.com
**McGuireWoods LLP**
50 North Laura Street, Suite 3300
Jacksonville, Florida 32202
(904) 798-3200
(904) 798-3207 (fax)
*Attorneys for Bank of America, N.A.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF on August 12, 2026. I also certify that the foregoing document is being served this day August 13, 2026 via U.S. Mail on the following:

Charles Jacob Stratmann
850 NE 3rd Street
Suite 208
Dania Beach, FL 33004
*Pro Se Plaintiff*

*/s/ Jason R. Bowyer*
Attorney